United States District Court
Southern District of Texas
**ENTERED**
January 04, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PAUL LOVIC WREN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-15-1847 |
| | § | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

### MEMORANDUM OPINION & ORDER

Pending before the court is plaintiff Paul Lovic Wren's motion for leave to join Larchmont Resources, L.L.C. ("Larchmont") as a necessary party and file an amended complaint. Dkt. 17. After considering the motion, responses, supplemental briefing, and applicable law, the court finds that the motion should be DENIED.

### I. BACKGROUND

In this breach of contract action, Wren alleges that Chesapeake Energy Corporation, Chesapeake Operating, Inc., Chesapeake Operating, L.L.C., Chesapeake Energy Marketing, Inc., Chesapeake Louisiana, L.P., PXP Louisiana L.L.C., PXP Louisiana Operations L.L.C., and Freeport-McMoRan Oil & Gas L.L.C. (collectively, "Defendants") have engaged in a scheme to underpay royalty owners, such as plaintiff, who have leased property to Defendants for oil and gas exploration. Dkt. 17, Ex. 3 ¶ 1. Wren originally filed this lawsuit in state court on May 15, 2015; Defendants subsequently removed the case to this court on June 29, 2015. Dkt. 17 at 1. On August 7, 2015, Wren moved to join Larchmont as a defendant in the case. *Id.* Wren alleges that Larchmont is also liable for underpayment of royalties because Chesapeake Louisiana, L.P. assigned part of its interest in Wren's lease to Larchmont. *Id.* at 2-3.

When Wren moved to join Larchmont as a defendant, Larchmont's citizenship was unknown. Dkt. 19 at 3. Wren therefore requested that the court grant a period of limited discovery to allow the parties to determine Larchmont's citizenship. *Id.* On September 16, 2015, the court granted Wren's request and gave the parties forty-five days to conduct discovery regarding Larchmont's citizenship. Dkt. 25. The discovery revealed that, like Wren, Larchmont is a citizen of Louisiana. Dkt. 31, Exs. 1-2. The parties are now in agreement that Larchmont is non-diverse and that its joinder would defeat the court's subject matter jurisdiction. Dkt. 31 at 1-2; Dkt. 32 at 1; Dkt. 33 at 1.

## II. LEGAL STANDARD AND ANALYSIS

Where a plaintiff seeks to join an additional defendant after removal whose joinder would destroy the court's subject matter jurisdiction, "the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e) (2012). "The decision between these two options rests squarely within the discretion of the district court." *Martinez v. Holzknecht*, 701 F. Supp. 2d 886, 888-89 (S.D. Tex. 2010) (Hacker, J.). However, "[t]he district court, when faced with an amended pleading naming a new nondiverse defendant in a removed case, should scrutinize that amendment more closely than an ordinary amendment." *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). In *Hensgens*, the Fifth Circuit identified four factors for the district court to consider in deciding the joinder question: (1) "the extent to which the purpose of the amendment is to defeat federal jurisdiction," (2) "whether plaintiff has been dilatory in asking for amendment," (3) whether plaintiff will be significantly injured if amendment is not allowed," and (4) "any other factors bearing on the equities." *Id.* The court will address each factor in turn.

### A. Whether the purpose of the amendment is to defeat federal jurisdiction

In analyzing the first *Hensgens* factor, courts consider "whether the plaintiff knew or should

2

have known the identity of the non-diverse defendant when the state court complaint was filed" and whether the plaintiff states a valid claim against the non-diverse defendant. *Gallegos v. Safeco Ins. Co. of Ind.*, No. 09-CV-2777, 2009 WL 4730570, at *3-4 (S.D. Tex. Dec. 7, 2009) (Rosenthal, J.) (citations and internal quotation marks omitted). Courts have found that a plaintiff's possession of a valid claim suggests that the purpose of a proposed amendment is not to defeat diversity. *Id.* at *4. "However, where a plaintiff knew or should have known the identity of the nondiverse defendant at the time of the lawsuit's original filing in state court, many courts have viewed this scenario with much suspicion and have suggested and/or determined that a plaintiff's effort was, in fact, to frustrate diversity jurisdiction." *Martinez*, 701 F. Supp. 2d at 889.

Defendants have not presented any significant argument that Wren's claim against Larchmont is not valid. For the purposes of deciding this motion, the court assumes the claim is valid. The parties have focused their arguments on whether Wren had adequate knowledge of Larchmont's interest at the time he filed his state court complaint.

Wren initially stated that he did not discover Chesapeake Louisiana's partial assignments to Larchmont until August 5, 2015. Dkt. 17 at 2. Defendants then produced a letter dated December 23, 2014, in which Wren's counsel was informed of Larchmont's 2.5% working interest in Wren's lease. Dkt. 21, Ex. B. Wren now acknowledges receipt of this letter. Dkt. 31 at 9. However, Wren notes that the letter did not include copies of the assignments; therefore, he was required to conduct his own research to obtain the assignments. *Id.* After over seven months of research, Wren obtained the assignments on August 5, 2015. *Id.*

Wren was aware of Larchmont's role at the time of filing the lawsuit in state court but did not move to join Larchmont until after the cases's removal to federal court. Wren received the letter informing him of Larchmont's interest on December 23, 2014; he filed his original petition almost

six months later on May 15, 2015. Dkt. 1, Ex. 2 at 49; Dkt. 21, Ex. B. Wren's explanation for his failure to join Larchmont initially—that he was waiting to obtain copies of the assignments to verify Larchmont's interest—is unpersuasive. The assignment contracts are publicly available; there is no reason why obtaining these documents would require over seven months of research. Although Wren may have a valid claim against Larchmont, the history of this case raises the strong inference that Wren waited to join Larchmont for the purpose of defeating diversity jurisdiction. *See WNWSR, L.L.C. v. Chesapeake Energy Corp.*, No. 4:15-CV-1860, 2015 WL 7357840, at *4 (S.D. Tex. Nov. 19, 2015) (Atlas, J.) (finding, in a related case, that the plaintiff was aware of its potential claims against Larchmont at the time of filing and that the sequence of events revealed the plaintiff's intent to defeat federal jurisdiction). Therefore, the first *Hensgens* factor weighs against permitting joinder of Larchmont.

B.   **Whether plaintiff has been dilatory in asking for amendment**

In analyzing the second *Hensgens* factor, "courts often look to the amount of time between the original state court action and the request to amend, and the time between removal and the request." *Lowe v. Singh*, No. 10-CV-1811, 2010 WL 3359525, at *3 (S.D. Tex. Aug. 23, 2010) (Werlein, J.). In general, a plaintiff is not dilatory in seeking to amend his complaint where no trial or pre-trial dates are scheduled and no significant activity beyond the pleading stage has occurred. *Gallegos*, 2009 WL 4730570, at *4. The analysis is different, however, when the proposed amendment would add a non-diverse defendant after removal and defeat diversity jurisdiction. *Id.* In this situation, a delay in making the request to amend of two months after filing the original complaint or thirty days after the notice of removal has been found dilatory. *Id.; see Wein v. Liberty Lloyds of Tex. Ins. Co.*, No. 15-CV-19, 2015 WL 1275915, at *6 (W.D. Tex. Mar. 19, 2015) (noting

4

that courts have found similar delays dilatory, especially where the plaintiff knew of the non-diverse defendant's role in the case at the time of filing in state court and yet failed to sue that defendant).

Wren filed his original state court action on May 15, 2015; the case was removed to this court on June 29, 2015; and Wren moved to join Larchmont on August 7, 2015. Dkt 1; Dkt.1, Ex. 2 at 49; Dkt. 17. Therefore, Wren moved to amend over two months after filing his original complaint and over a month after the case was removed. As noted above, Wren learned of Larchmont's interest well before filing his state court lawsuit. Based on these circumstances, the court finds that Wren was dilatory in seeking leave to amend. Therefore, the second *Hensgens* factor weighs against permitting joinder of Larchmont.

**C.    Whether plaintiff will be significantly injured if amendment is not allowed**

In analyzing the third *Hensgens* factor, courts ask "whether a plaintiff can be afforded complete relief in the absence of the amendment." *Lowe*, 2010 WL 3359525, at *3 (citation and internal quotation marks omitted). Therefore, "courts consider whether the already named diverse defendant would be unable to satisfy a future judgment." *Gallegos*, 2009 WL 4730570, at *5; *see also Wein*, 2015 WL 1275915, at *6 (finding that the third *Hensgens* factor weighed against joinder where there was no indication that the originally-sued defendant would be unable to satisfy a judgment).

Here, there is no evidence that Defendants would be unable to satisfy a judgment in Larchmont's absence. *See* Dkt. 22 at 6 ("Plaintiff has not alleged, and has no basis to allege, that Defendants would be unable to satisfy a damages award in this case."). Moreover, Wren argues that Larchmont and the other Defendants are jointly and severally liable for the alleged underpayment of royalties. Dkt. 17 at 3. Therefore, Wren could obtain relief from the current Defendants. Further, Wren can still pursue his claims against Larchmont in state court.

5

Wren argues, however, that it would be inefficient and costly to maintain parallel state and federal court litigation and that parallel litigation could lead to inconsistent results. Dkt. 17 at 9-10; Dkt. 31 at 8. Some courts have held that the possibility of additional state court proceedings favors granting leave to join. *See Gallegos*, 2009 WL 4730570, at *5 (noting that some courts have held that the inefficiency and cost of parallel state proceedings weigh against denying the proposed amendment). Other courts have held that the possibility of parallel litigation does not constitute prejudice. *See Martinez*, 701 F. Supp. 2d at 892 (holding that the additional expense of parallel proceedings did not constitute sufficient prejudice to weigh in favor of allowing amendment); *Apollo Alternative Fuels Co., LLC v. Energy Ventures Org., Inc.*, No. 3:06-CV-1278, 2007 WL 1002243, at *3 (N.D. Tex. Mar. 31, 2007) (finding that the additional costs associated with a parallel state court action did not constitute prejudice where plaintiffs did not show that their ability to pursue the claims in state court would be "legally compromised"); *see also Zimmerman v. Travelers Lloyds of Tex. Ins. Co.*, No. 5:15-CV-325, 2015 WL 3971415, at *9 (W.D. Tex. June 30, 2015) (finding that the potential burden of litigating in two different court systems was mitigated by the fact that the plaintiff could likely obtain full relief from the diverse defendant). Even assuming that it would prejudice Wren to pursue state court litigation, the cost and inconvenience of this additional litigation stems from Wren's own failure to initially join Larchmont in his complaint. *See WNWSR*, 2015 WL 7357840, at *5 (finding that the plaintiff accepted the inconveniences of parallel proceedings in state court when it failed to join the non-diverse defendants initially).

Further, there is reason to doubt that Wren will file a state court suit against Larchmont, given that he failed to join Larchmont in his original complaint and that Larchmont owns a small interest in his lease. *See Wein*, 2015 WL 1275915, at *6 (finding that there was reason to question whether the plaintiff would pursue state court litigation against the non-diverse defendants given that he did

6

not name them in his original complaint); *Adey/Vandling, Ltd. v. Am. First Ins. Co.*, No. 11-CV-1007, 2012 WL 534838, at *4 (W.D. Tex. Feb. 17, 2012) (finding that the possibility of parallel suits could not outweigh the plaintiff's clear motive to destroy diversity where it was doubtful that plaintiff would pursue the parallel litigation).

The court finds that Wren will not be significantly injured if amendment is disallowed. Therefore, the third *Hensgens* factor weighs against permitting joinder of Larchmont.

**D.     Other equitable factors**

Under the fourth *Hensgens* factor, courts consider "any other factors bearing on the equities." *Hensgens*, 833 F.2d at 1182. The parties have not identified any relevant equitable factors that were not considered in the court's analysis of the other *Hensgens* factors. Therefore, the fourth *Hensgens* factor is neutral. *See Lowe*, 2010 WL 3359525, at *3 ("The Court discerns no other factors bearing on the equities not already analyzed in connection with the first three factors, making the fourth *Hensgens* factor neutral."); *see also Gallegos*, 2009 WL 4730570, at *5 (finding the fourth *Hensgens* factor neutral where equitable considerations, such as the defendant's right to a federal forum and the possibility of parallel state court proceedings, were properly considered as part of the other factors).

After a review of the *Hensgens* factors, three factors weigh against allowing joinder of Larchmont and one factor is neutral. Therefore, the *Hensgens* factors weigh heavily against permitting joinder of Larchmont. As a result, Wren's motion for leave to join Larchmont is DENIED.

### III. CONCLUSION

Wren's motion for leave to join Larchmont (Dkt. 17) is DENIED.

Signed at Houston, Texas on January 4, 2016.

_____
Gray H. Miller
United States District Judge